### HENRY v. UNITED STATES.

(Court of Appeals of District of Columbia. Submitted April 5, 1921. Decided May 2, 1921.)

#### No. 3471.

1. **Principal and agent** ⊙⇒102(1)—**Authority to sell stock includes authority to employ an agent to sell.**

A power of attorney to transfer title to stock impliedly authorized the agent to do all things necessary in the usual course of business to effectuate the sale, including the employment of a subagent to make the sale, and the subagent employed would be the agent of the principal, and not of the agent.

2. **Embezzlement** ⊙⇒44(1)—**Evidence held to show agency.**

In prosecution for embezzlement of stock certificates, evidence *held* to show that accused was employed as agent to sell the certificates.

3. **Embezzlement** ⊙⇒10—**Property coming into agent's possession contemporaneously with creation of agency may be embezzled.**

Under Code of Law, § 834, defining embezzlement, agency need not exist prior to the coming into accused's possession of the property alleged to

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

have been embezzled; but, if the agency came into existence contemporaneously with the delivery of the property in question, this is enough.

4. **Embezzlement** ⬧⟶10—**Property need not be received by agent from his principal; "under his care."**

Under Code of Law, § 834, defining embezzlement, it is not essential that the converted property should have been received by the agent from a person other than his principal, as the phrase "under his care," in the statute, covers property received either from a third person or from the principal.

5. **Criminal law** ⬧⟶829 (1)—**Refusal of requested charges already covered not error.**

When a subject is fully covered by the court's charge, it is not error to refuse a request for an instruction with respect to the same matter.

6. **Criminal law** ⬧⟶655 (5)—**Action of court in checking counsel's argument, based on different view of law from that charged, held not erroneous.**

In an embezzlement prosecution, the action of the court in preventing counsel for defendant from proceeding further in argument, based on a different view of the law from that which the court had announced, *held* not erroneous.

7. **Criminal law** ⬧⟶656 (1)—**Remark of court that it would not "let this man out" held not prejudicial.**

In an embezzlement trial, remark of the trial court, when overruling motion for peremptory instruction to acquit defendant, that "I am not going to take the responsibility of taking the view of the law you present, and letting this man out, but I shall let the Court of Appeals decide the law points you make," was not prejudicial, in using the phrase "letting this man out," since that was exactly what the court was asked to do.

8. **Criminal law** ⬧⟶801—**Whether requested charge shall be given in advance of the argument held discretionary.**

Whether a requested charge shall be given the jury in advance of counsel's argument rests in the sound discretion of the court, and where the requested charge relates to a familiar principle, about which there can be no doubt, so that counsel might well assume that such is the law, and argue accordingly, the refusal so to charge is not an abuse of discretion.

9. **Criminal law** ⬧⟶785 (16)—**Instruction on right to disregard the entire testimony of willfully falsifying witness held proper.**

In an embezzlement prosecution, an instruction as to the jury's right to entirely disregard the testimony of a witness, if willfully falsifying in any material matter, but cautioning that this rule does not apply where one makes an honest mistake as a witness, *held* correct.

10. **Embezzlement** ⬧⟶5—**Intent to restore property converted no defense.**

An intent at the time of the conversion to restore the embezzled money is not a defense.

11. **Criminal law** ⬧⟶1119 (4)—**Statements of counsel must be preserved, to show discrimination of court in dealing therewith.**

The appellate court cannot consider accused's claim that the trial court discriminated in favor of the prosecuting attorney and against accused's attorney, in that the court overruled objections to the prosecuting attorney's statement and sustained an objection to the statement of counsel for accused, where neither statement is given, so as to show the correctness or otherwise of the court's ruling with respect to them, since the appellate court cannot assume that such ruling was incorrect.

12. **Criminal law** ⬧⟶656 (2)—**Court's suggestion as to form of answers of witness held proper.**

During the cross-examination of prosecuting witness in an embezzlement trial, he answered, in response to questions whether he did not testify so and so at the former trial of the case, "If the record states that, probably I did." The court intervened and admonished him not to put his

---

⬧⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

answers in that way, as counsel was searching his recollection, "not as to the fact, but as to what you said before. Have you any recollection as to how you testified before?" and, on the witness' answer, "No, I have not," the court said, "Well, that answers that, then." *Held*, the court's action was not improper.

13. **Embezzlement ☞48(1), 52—Case properly submitted on both counts of indictments charging one offense.**

Where two counts of an indictment charged the embezzlement of the property of different persons, but by a single act, there was only one offense committed, and on verdict on both counts the trial court, in sentencing accused, properly treated the two counts as one, but the case was properly submitted to the jury on both counts.

Robb, Associate Justice, dissenting.

Appeal from the Supreme Court of the District of Columbia.

John William Henry was convicted of embezzlement and appeals. Affirmed.

See, also, 49 App. D. C. 207, 263 Fed. 459.

Dan Thew Wright and Philip Ershler, both of Washington, D. C., for appellant.

John E. Laskey and J. B. Archer, both of Washington, D. C., for the United States.

SMYTH, Chief Justice. From a judgment sentencing him to a term of six years in the penitentiary for embezzling as an agent four certificates of stock valued at $4,000, Henry appeals.

At the time of the transaction complained of Henry and one Woodruff were copartners, engaged in the banking and brokerage business in Washington under the name of Lewis Johnson & Co. One certificate for two shares of stock belonging to John Helmus, and three certificates, representing 18 shares owned by his mother, were delivered by Helmus to the copartnership at its banking house for the purpose of being sold for a price named. At the same time authority to transfer the title to the purchaser was given to the company. Shortly afterwards Henry hypothecated them for the use of the firm and never accounted to the owners for the certificates or their proceeds.

Henry and Woodruff were indicted in four counts. The first charged that they were agents of John Helmus, and that by virtue of their employment his certificate came into their possession and was wrongfully and feloniously converted by them to their own use and embezzled. In the second count they were charged with larceny after trust of the same certificate. The third count is like the first, and the fourth like the second, save that each deals with the certificates belonging to Mrs. Helmus. In other words, the first and third counts charge embezzlement, and the second and fourth, larceny after trust. Woodruff was not brought before the court and therefore needs no further attention.

Henry was tried and convicted on the first and third counts, and acquitted on the second and fourth. He appealed, and this court reversed the case and ordered a new trial. Upon the second trial he was again convicted on the first and third counts and sentenced as we have

stated. He now contends that if he was guilty of any offense it was larceny after trust—the crime of which he was acquitted at the first trial—and not embezzlement.

Section 834 of the Code, on which counts 1 and 3 are based, provides:

"If any agent * * * of a private person * * * shall wrongfully convert to his own use * * * anything of value which shall come into his possession or under his care by virtue of his employment or office, whether the thing so converted be the property of his master or employer or that of any other person, * * * he shall be guilty of embezzlement. * * * "

A motion for a directed verdict, on the theory that there was a variance between the charge in the indictment and the proof, made at the close of the government's testimony, was overruled. At the bar Henry's counsel stressed the contention that the proof did not show that he was the agent of the Helmuses before the certificates came into his hands, and that because of this an important element of the crime alleged was not established.

[1] Helmus was the agent of his mother for the sale of the stock. She says so. He held her powers of attorney to transfer the title. Under this authority he was empowered to do all things necessary in the usual course of business to effectuate the sale, including the employment of an agent. Dispatch Printing Co. v. National Bank of Commerce, 109 Minn. 440, 450, 124 N. W. 236, 50 L. R. A. (N. S.) 74; Benjamin v. Benjamin, 15 Conn. 347, 355, 39 Am. Dec. 384; Kaufman Bros. Co. v. Farley Mfg. Co., 78 Iowa, 679, 685, 43 N. W. 612, 16 Am. St. Rep. 462; 21 Ruling Case Law, § 33, p. 853; 1 Mechem on Agency (2d Ed.) §§ 316, 332; Strong v. West, 110 Ga. 382, 385, 35 S. E. 693; Renwick v. Bancroft, 56 Iowa, 527, 530, 9 N. W. 367; Broom's Legal Maxims, 816. The agent thus employed would be the agent of Mrs. Helmus, not of her son. See authorities just cited. Helmus, therefore, had the power to constitute Henry the agent of his mother.

[2] The day before the certificates were delivered Helmus called at the office of the banking house and made known to Lammond, the bookkeeper, that he desired to dispose of certain certificates of stock belonging to himself and his mother. Lammond advised him to speak to Mr. Henry about it, and he brought Mr. Henry into the corridor, where he introduced Helmus to him as a member of the firm. Helmus told Henry substantially what he had said to Lammond, and, in addition, that he desired $210 a share for the stock, but would take $208 for a quick sale; that three of the certificates belonged to his mother and one to himself, and that his mother had given him two powers of attorney to dispose of her certificates. There was some question as to whether or not the powers were sufficient, but Henry said he thought they were. On the reverse side of the son's certificate was a form of assignment, without the assignee's name, which was signed by the son. One of the powers of attorney signed by the mother was blank as to the name of the attorney. The next morning Helmus brought in the certificates with the powers of attorney in the condition stated, and

delivered them to Henry in person. Henry took them and later hypothecated the certificates.

Many decisions have been brought to our attention defining in the abstract the elements of embezzlement and larceny after trust. Abstract principles are easy to find, but sometimes it is difficult to apply them to a given state of facts. Our attention has not been called to any authority which holds that under a state of facts similar to those in the case at bar an agency was not established, nor have we found any.

[3] We think the testimony warranted the jury in finding that, on the day before the certificates were delivered, Henry impliedly agreed to sell them for the Helmuses on the conditions named, to accept from the Helmuses the power to transfer the title to the purchaser, and to account to them for the proceeds; that this constituted him the agent of the Helmuses, and that when the certificates were handed to him the next day he received them by virtue of his agency. There is no other reasonable hypothesis upon which the testimony can be explained; but, even if there were, it would be for the jury, not for us, to adopt it. We must not be understood, however, as holding that a pre-existing agency was necessary. If the agency came into existence contemporaneously with the delivery of the certificates, that would be enough.

[4] By comparing the testimony with section 834, under which the verdict was returned, we will find that it responds to each element of the crime defined in the section. It discloses that Henry was the agent of a private party (the Helmuses); that he wrongfully converted to his own use a thing of value, which belonged to his employer and which came into his possession or under his care by virtue of his employment. There is nothing in the section which warrants the construction for which counsel contends, namely, that if "the agent converts property, which he received *from* his master," he cannot be convicted of embezzlement. Some embezzlement statutes may be open to that construction, but not this one. Criminal statutes, like other statutes, are to be construed reasonably.

"There is no more reason why courts should allow themselves to be misled by mere names and shadows in the administration of justice in criminal than in civil cases." Calkins v. State, 18 Ohio St. 366, 371, 98 Am. Dec. 121, 125.

Even if we admit that Henry had only the custody of the certificates, and that their possession was in the Helmuses, whose agent he was at the time of the conversion, it would make no difference, because they were certainly "under his care." Mr. Freeman, speaking upon the subject, in a note to Calkins v. State, supra, says:

"The phrase 'under his care' will cover property merely in his custody, and therefore, under such a statute, it is immaterial whether he receives possession of the property from a third person or from his master; for in either case the property is under his care, and if he converts it he is guilty of embezzlement." 98 Am. Dec. 130—citing People v. Dalton, 15 Wend. (N. Y.) 581, 583; People v. Hennessey, 15 Wend. (N. Y.) 147, 151; Ker v. People, 110 Ill. 630, 51 Am. Rep. 706; Territory v. Maxwell, 2 N. M. 250; Calkins v. State, supra; Gibbs v. State, 41 Tex. 491; State v. Wingo, 89 Ind. 207.

Nor is it necessary for us to inquire what facts would constitute a violation of Code, § 851b, which deals with larceny after trust, for a jury at the first trial found that Henry was not guilty under that section. It is sufficient for us to know that the record amply sustains the verdict of the jury that Henry is guilty of the crime defined by section 834.

[5] Defendant requested the court to charge that before the jury could convict him the evidence must prove beyond a reasonable doubt that he was the agent of the Helmuses and that he received the certificates by virtue of such agency. The agency element was fully covered by requests 16 and 18, which were granted, and the other element by the charge of the court. In the charge the jury were told that they could not convict the defendant under the first count unless they found beyond a reasonable doubt that the certificate of Helmus, the son, had come into his possession as agent, and this instruction was made applicable to the third count, the one relating to Mrs. Helmus' certificates. When the subject is fully covered by the court's charge, it is not error to refuse a request for an instruction with respect to the same matter. Washington Railway & Electric Co. v. Upperman, 47 App. D. C. 219, 228; Washington & Rockville Railway Co. v. La Fourcade, 48 App. D. C. 364, 368; Sinclair v. United States, 265 Fed. 991, 49 App. D. C. 351, 352.

[6] While counsel for the defendant was arguing to the jury that his client could not be convicted unless agency pre-existed the delivery of the certificates, he was interrupted by the court and told that he was taking a different view of the law from that which the court had announced. He disclaimed any intention of doing so. After some further interchange of remarks, the court said:

"Stop now, if you please. * * * If you will take your seat a moment, we will have this thing straightened out right now. You asked me to charge that agency must have existed before these certificates were brought to Lewis Johnson & Co., and I refused to so charge. Now, you are arguing to the jury that that is the law, and you must not do it any further."

Counsel protested that he had not had time to read the instructions which had been refused. To this the court responded that he would then give him time to read them, but counsel declined to do so, saying:

"I have torn away those that were refused, and have only those that were given."

It will be noticed that counsel did not deny that he was presenting to the jury a different view of the law from that which the court had adopted, but sought to excuse himself by saying that he had no intention of doing so. We think it was entirely proper for the court to prevent him from indulging further in that line of argument. Hyde v. United States, 35 App. D. C. 451.

As a part of the same colloquy, counsel asked the court to permit him to argue to the jury that Henry was not the agent of Mrs. Helmus. The court answered:

"The points to be argued are sufficiently intimated by the granted instructions, and you know perfectly well what they are."

Of course this was true, because the court had a short time before informed him as to which requests were granted and which refused. Counsel did not deny knowledge, but answered:

"I have always thought that one might argue the elements of crime charged in the indictment; and before undertaking to do that, I will ask your honor whether I can argue that question now."

The court again said:

"You know perfectly well what the point is and what the court has held."

There was nothing in the ruling of the court which required counsel to solicit this permission. He was simply forbidden to argue that there could be no conviction unless agency existed before the certificates were brought to Henry, because the court had ruled otherwise. As to the other matter, he was perfectly free to discuss it or not, as he thought proper.

At the conclusion of the court's charge the subject was brought up again, counsel asserting that he had been denied the right to argue to the jury the question whether or not Henry was the agent of the Helmuses. This the court denied, saying:

"We will have no misunderstanding about this. I think the record makes it perfectly clear. Will you please sit down? I have something to say which may be of importance hereafter, and it embarrasses me to have you stand while I state it."

The court then related what had taken place substantially as we have already given it, and concluded with the statement that as to whether or not Henry was holding the stock as the agent of Mary or John Helmus:

"I never was called upon to say anything, and, of course, I had no objection to that being argued. *Counsel may argue it now if he wants to.*"

But counsel refused to avail himself of the permission. We think the court committed no error in anything it said or did in this connection.

It is urged that the manner in which the court handled the situation discredited counsel in the eyes of the jury and thereby prejudiced the cause of his client. If so, it was not the court's fault. It could not have done less than it did, for surely no one will attempt to maintain that it should have allowed counsel to proceed in his argument to the jury on a theory of law in conflict with its ruling. In some jurisdictions, but not in this, the jurors in criminal cases are the judges of the law as well as of the fact. The language employed by the court was polite and considerate throughout and in every way proper. We do not think that what took place had any tendency to injuriously affect the interests of appellant. Jurors are intelligent, and understand that a defendant at the bar should not be prejudiced because his counsel's course is not always approved by the court.

[7] When overruling the motion for a peremptory instruction to the jury to acquit the defendant the court said:

"I am not going to take the responsibility of taking the view of the law you present and letting this man out; but I shall let the Court of Appeals de-

eide the law points you make. I am going to let the jury say whether the man did this thing and did it with the intent charged."

Exception is taken to the phrase "letting this man out," but that is precisely what defendant asked the court to do, though he used different language. No prejudice could have resulted.

[8] The defendant requested the court to charge that the testimony given by John Helmus with respect to whether or not he handed the certificates to Henry personally or to Lammond related to a material matter, and that if they believed he had willingly testified falsely with respect to it they were at liberty to disregard his testimony entirely. This was coupled with a request to give the instruction before the argument. Both requests were refused. Our attention has not been called to any statute or rule of practice requiring the court to charge the jury in advance of the argument. Whether he should or not relates to a matter of procedure and rests in the sound discretion of the court. Unless that discretion is abused, nothing occurs to invoke the power of this court. Consaul v. Cummings, 30 App. D. C. 540, 547; Central National Bank v. National Metropolitan Bank, 31 App. D. C. 391, 396, 17 L. R. A. (N. S.) 520. We see no reason for saying it was abused here. It was not necessary that the court should have given the charge in advance of the argument, in order that counsel might discuss before the jury the point covered by it. It related to a familiar principle, one about which there could have been no debate. Counsel might well have assumed that such was the law and have proceeded accordingly.

Earnestly counsel argued that the testimony of Helmus at this trial was different from that which he gave at the former trial, and that the failure of the court to give the instruction before the argument restricted him in his discussion of the matter before the jury, much to the disadvantage of his client. As we have said, we do not think he was limited in that respect. But is the testimony of Helmus at this trial materially different from what it was at the former one? Undoubtedly it is different in matters of detail. In essentials, however, it is the same. The point to which it is directed is whether or not Henry knew at the time the certificates were converted that they belonged o Helmus and his mother, and not to him or his partner. Helmus testified at this trial, as we have already pointed out, that he handed the certificates to Henry personally in the corridor of the bank. At the former trial he said:

"I left the securities at the window of the bookkeeper with Mr. Lammond. who in turn handed them over to Mr. Henry," who was "standing right back of Lammond. * * * Lammond immediately passed the certificates to Mr. Henry. * * * He [Henry] took the certificates, and the only thing I remember now is that they [Henry and Lammond] came around into the reception room, and there was a talk as to whether these two powers of attorney would cover the three certificates of stock belonging to mother."

According to the testimony in both cases, the certificates reached Henry's hands in circumstances which warranted, if they did not compel, the conclusion that he knew they belonged to the Helmuses and knew the conditions under which they parted with them to him. The

testimony at the one trial was as effective in that regard as at the other. It was utterly immaterial whether they were handed to him in the corridor, behind the bookkeeper's window, or in the reception room.

[9] Whether or not Helmus told the truth was a question of fact for the jury, not for the court, and it was left to that body by the general charge, which reads:

"Now, I am asked to charge you upon another subject, which I do not feel like alluding to, unless requested, because you might infer from it what I think about some feature of the case, and I do not wish to give you the slightest impression as to what I think about the case, because, as a matter of fact, that is your province, and you are entirely competent to decide the case without any information from the court or anybody else. It is a rule of law, and I am asked to tell it to you, that whenever a witness upon the stand before you willfully and intentionally testifies falsely as to any material matter, you have the right to disregard all his testimony, if you find that to be the fact. If a witness cannot be trusted to observe his oath in one particular, you have the right to say that you cannot believe or trust him in any other particular; but that implies that you find that he has intentionally testified falsely. It makes no difference who the witness is, of course; but do not infer from that that I give any intimation that I think anything of that sort has happened or has not happened in the case. I am simply stating a rule of law, because I am requested to do so. That is true in every case, because all you have to rely upon is the oath of the witness; but you must not get that mixed up with a man making an honest mistake as a witness, because he might be mistaken about one part and correct as to another part."

This is a commendably fair, full, and correct statement of the law bearing on the point.

We have already seen that no error can be predicated on the failure to give a requested instruction, where the subject is completely covered, as here, by the court's general charge. See cases supra. In addition it should be noticed how careful the learned justice was to say that he did not desire to convey to the jury the notion that he had any view either one way or the other upon the question. In Corberth v. Great Atlantic & Pacific Tea Co., 36 App. D. C. 569, 575, Mr. Justice Robb, speaking for this court, used the following language:

"Owing to the weight given to [by] the jury to any expression of opinion by the trial judge, the interests of justice require that he should 'be careful to avoid any remarks which might tend to convey the impression to the jury that he has an opinion with respect to the proof of any disputed fact that has been submitted to them for decision'"—and cited Washington Gaslight Co. v. Poore, 3 App. D. C. 139.

Evidence was offered tending to show that in the early fall of 1914 Henry had made an application for a loan of $100,000; that a young man then in the employ of Lewis Johnson & Co., desirous of becoming a member of the firm, made application to insurance companies to borrow $100,000 for the purpose of purchasing an interest in the firm; that his ability to procure the money depended upon certain conditions, which, so far as the record shows, were not fulfilled. The loans were not procured. It appears from a letter dated September 18, 1914, more than a month before the conversion of the certificates took place, that the applications had been abandoned. There is nothing which shows that Henry, if the money had been procured, would or could have utilized it for the purpose of redeeming the certificates, or that

he relied upon the receipt of this money for that purpose, or that he had any intention at the time of the conversion of redeeming the certificates.

[10] However, that is immaterial, because evidence of an intent at the time of the conversion to restore the embezzled money is not admissible. If Henry converted the property with the necessary criminal intent, it would avail him nothing to show that at the same time he had the purpose of returning it at some future date, if he could procure the means with which to do it. Nearly every one who embezzles property does so with intent of returning it. If proof of such an intent would constitute a defense, the statute would become a nullity. In such a case the guilt of the defendant would depend, not upon the fact that he had converted the property with a criminal intent, but upon his ability to replace the thing taken.

"In other words, it is not the blameworthiness of the act or of the mind, but the result of the hazard, or the skill in the actor in playing the game, which decides its legal quality. Such a doctrine offers temptation to a thousand thousand custodians of trust funds, whose temptations are great enough at best; it encourages the reckless and unfortunate to commit crime, whereas the very purpose of the statute is to deter the tempted fiduciary from a breach of his trust and to protect society from the evils of a practice which has become well-nigh epidemic. If the law be given such a loose interpretation and be so feebly enforced, public faith and credit will be impaired, and the stability of the financial institutions of the state will be in jeopardy."

Thus spoke the Supreme Court of Ohio in State v. Baxter, 89 Ohio St. 269, 278, 104 N. E. 337, 334 (52 L. R. A. [N. S.] 1019, Ann. Cas. 1916C, 60). See, also, National Life & Accident Insurance Co. v. Gibson, 101 S. W. 895, 31 Ky. Law Rep. 101, 103, 12 L. R. A. (N. S.) 717; State v. Silva, 130 Mo. 440, 463, 32 S. W. 1007; Commonwealth v. Tuckerman, 76 Mass. (10 Gray) 173, 206, 207.

Some of the authorities cited by appellant on this point do not support his contention, and others hold that, "to make such a defense available, there must not only be the intent, but the ability, to redeem." Blackburn v. Commonwealth (Ky.) 89 S. W. 160. There is no evidence of such ability on the part of the appellant. Anyhow, we prefer to follow the rule of the Baxter Case, and those supporting it, supra.

[11] It is claimed that the court discriminated in favor of the United States attorney and against the counsel for the defense. When the former was making his statement to the jury, the latter objected on the ground that what he was saying had nothing to do with the charge in the indictment. The court overruled the objection and advised the jury that they should pay no attention to statements of counsel, unless they were subsequently supported by evidence. Later on, when counsel for the defendant was making his statement, objection was made that he was arguing the case, to which the court replied:

"I think, perhaps, counsel has gone far enough to indicate the importance of that; that is, the bearing of it."

Neither statement is given. For aught that appears, the ruling of the court with respect to both was correct. We cannot assume that it was not (Cliquot's Champagne, 3 Wall. 114, 140, 18 L. Ed. 116;

Sturges v. Carter, 114 U. S. 511, 522, 5 Sup. Ct. 1014, 29 L. Ed. 240), and therefore cannot say that there was any discrimination.

[12] During the cross-examination of Helmus he was asked repeatedly if he did not testify so and so at the former trial, to which he answered, "If the record states that, probably I did." The court intervened and admonished him not to put his answers in that way; that counsel was searching his recollection, "not as to the fact, but as to what you said before. Have you any recollection as to how you testified before?" To this witness answered, "No; I have not." The Court: "Well, that answers that, then." No objection was made at the time to the court's interfering, and the cross-examination proceeded at considerable length. Now it is said that the "entire purpose and effect of the cross-examination was destroyed" by the court's action. There is no basis for such contention. In federal jurisdictions the judge presiding at a trial "has a right, and, indeed, it is his duty, to see that the facts of the case are brought intelligibly to the attention of the jury, and to what extent he will intervene for this end is a matter of discretion." New York Transportation Co. v. Garside, 157 Fed. 521, 524, 85 C. C. A. 285, 288. See, also, Berwind-White Coal Mining Co. v. Firment, 170 Fed. 151, 153, 95 C. C. A. 1; Adler v. United States, 182 Fed. 464, 472, 104 C. C. A. 608 and Budd v. United States, 48 App. D. C. 332, 336.

[13] As heretofore stated, the first count charged the embezzlement of the son's certificate, and the third the embezzlement of the mother's certificates; but, since both were embezzled by a single act, we held, when the case was here before (49 App. D. C. 207, 263 Fed. 459), that there was but one offense committed. The learned trial justice at this trial took a verdict on both counts, but when he sentenced the defendant he, in accordance with our opinion, treated the two counts as one. Complaint is now made of the action of the court in submitting the case to the jury on both counts. In doing this the court did not err.

Other points have been raised by the appellant, but, after careful consideration, we find no merit in them. Appellant has had a fair trial throughout, and the judgment must be and it is affirmed.

ROBB, Associate Justice (dissenting). The most material witness at the trial of this case was John Helmus, for he it was who made all the arrangements with the firm of Lewis Johnson & Co. concerning the shares of stock for the embezzlement of which Henry stands convicted. In the first trial of this case, when, presumably, the recollection of Mr. Helmus was fresher than several years later, at the second trial, he testified as follows:

"I left the securities at the window of the bookkeeper with Mr. Lammond, who in turn handed them over to Mr. Henry."

The witness then was asked where Mr. Henry was standing at the time, and answered:

"Standing right back of Mr. Lammond."

At the second trial this witness, testifying with reference to the same transaction, said:

(273 F.)

"When I handed over the securities to Mr. Henry it was in the corridor.

"Q. You handed over the securities personally to Mr. Henry, did you? A. Yes.

"Q. And that was in the corridor? A. Yes.

"Q. Whereabouts in the corridor were you standing? A. Just about in front of the bookkeeper's window; Mr. Lammond's window. * * *

"Q. Was Mr. Lammond in the corridor at the time? A. Yes."

No explanation was vouchsafed by the witness for this material change in his testimony. Prior to the argument, counsel for Henry, acting well within his rights, requested the court to grant a number of instructions, among them the following, which counsel brought directly to the court's attention:

"If you find that any witness testified before you to a material fact in a way so different from his testimony given at a prior trial as that he could not honestly be mistaken about it, then you are justified in finding that this witness willfully testified falsely, and you may disregard his testimony either in whole or in part."

This request was refused, without any intimation from the court that it would be covered in the general charge. As the majority opinion discloses, when counsel for Henry was making his argument before the jury, the trial justice, conceiving that he was going beyond the granted instructions, sharply reprimanded him, saying:

"The points to be argued are sufficiently intimated by the granted instructions, and you know perfectly well what they are."

Whatever may have been in the mind of the trial judge when he refused to grant this instruction, which was peculiarly applicable to the situation, the result was to deprive counsel of the right to bring sharply to the attention of the jury the fact that the most material witness in the case had changed his testimony on a material point, and hence that his credibility had been seriously affected. No reason whatever has been advanced as to why this perfectly proper prayer should not have been granted, and none is apparent to me. That the trial justice made an apologetic effort to cover the point, *after argument,* is beside the question, for through the court's abuse of discretion counsel had been deprived of the valuable right of bringing the matter to the attention of the jury. The acquittal of Henry at the first trial, under the two counts charging larceny after trust, may or may not have influenced the testimony of this witness at the second trial. He may have been honestly mistaken in his testimony at the first trial, and right at the second trial; but those questions were for the jury, and not for the court.

A reading of the whole record compels the belief that Henry was not accorded that fair and impartial trial guaranteed him under the laws of the land, and that, in the particular matter to which I have adverted, his rights were seriously invaded. I therefore am constrained to dissent from the opinion and judgment of the court.