## WEBER v. EATON.
### No. 9299.

United States Court of Appeals
District of Columbia.

Argued Jan. 15, 1947.

Decided March 10, 1947.

Mr. Henry I. Quinn, of Washington, D. C., for appellant.

Mr. Michael F. Keogh, of Washington D. C., with whom Messrs. J. Robert Carey and Richard H. Love, both of Washington, D. C., were on the brief, for appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Associate Justices.

WILBUR K. MILLER, Associate Justice.

The appellant, Mrs. Hazel Weber, seeks reversal of a judgment against her for $8,-000 awarded to Mrs. Gertrude M. Eaton, the appellee, by the District Court of the United States pursuant to the verdict of a jury. Mrs. Eaton was injured on the evening of February 22, 1944, while she was riding in Mrs. Weber's automobile on Wisconsin Avenue in the District of Columbia. Mrs. Weber was in Florida. Her husband, Herbert E. Weber, used his wife's car in calling at the Westchester Apartments for Mrs. Eaton in order to take her to a dinner or bridge party to which they both testified they had been invited. It was

raining, or had been raining, and the streets were wet and slick.

After leaving the Westchester, Weber turned into Wisconsin Avenue and proceeded toward the south. While the car was traveling at what both he and Mrs. Eaton described as a moderate rate of speed, and just after passing a streetcar which was moving in the same direction, the automobile suddenly turned or skidded in front of and was struck by the southbound streetcar, and almost immediately was hit by another streetcar which was northbound. The automobile was sandwiched in between the two cars and it was then that Mrs. Eaton was hurt.

She and Weber were taken to a hospital and Weber was released as soon as his injuries had been dressed. A police officer who was investigating the accident then returned him to the scene and there interrogated him. He testified, without objection, that when asked the reason for the odor of alcohol on his breath, Weber said he had taken two cocktails or two drinks just prior to the collision and, as the officer understood, at Mrs. Eaton's apartment. With reference to the accident, Weber first said that he thought he had struck the curb and skidded, but afterward said he did not know what happened. He acknowledged fault, the officer said, and asked him to "just forget the whole thing." Weber said from the witness stand that he was driving carefully, did not turn the wheel, and did not know what caused the car to skid.

Another police officer, who also noticed the odor of alcohol on his breath, testified, without objection, that Weber said he had had "a couple of drinks" at an "apartment with the lady who was in the car with him." He also said to the second officer he "guessed he skidded" and added that he was not sure whether or not he made a lefthand turn. Weber and Mrs. Eaton both denied the drinking.

Two pedestrians on Wisconsin Avenue testified that "the automobile apparently tried to pass the streetcar. It seemed to hit the curb while being abreast of the street-

car and then turn or skid in front of the streetcar." The two motormen said the automobile turned so suddenly to its left onto the car tracks that they could do nothing to prevent the streetcars from striking it. Another witness was Mrs. Mary Gibb who, according to Weber and Mrs. Eaton, was to have been their hostess for the evening. She testified that she was ill in bed on February 22, 1944, that she had not invited Weber and Mrs. Eaton to her home that evening, that she had not expected them to call, and that she did not know Mrs. Eaton.

Mrs. Eaton sought damages from Mrs. Weber for the injuries she suffered because of what she said was the "reckless and careless manner" in which her car was operated by her agent, Herbert E. Weber.[1] She joined Capital Transit Company as a defendant, charging it with negligent operation of its streetcars. The verdict was against Mrs. Weber only and she appeals, saying that the trial court erred in refusing to instruct the jury on contributory negligence, assumed risk and unavoidable accident. She complains also of an instruction absolving the appellee of contributory negligence.

Although the appellant requested instructions on assumed risk and contributory negligence, her argument before us is in the alternative, as though she regarded the two defenses as identical or so substantially similar that she would have been content had she been afforded the benefit of either.

■ Contributory negligence and assumed risk are so closely related as sometimes to be almost, if not entirely, indistinguishable. In cases which do not arise between master and servant, the two terms may well be considered synonymous in the sense that one who voluntarily places himself in a perilous position, when the potential danger is apparent, is not exercising ordinary care for his own safety.[2] But in another sense a difference between contributory negligence and assumed risk is easily discerned, since the former depends entirely upon conduct and the latter in-

---

[1] It is alleged in the complaint and admitted by Mrs. Weber's answer that Weber was his wife's agent in operating the car.

[2] Poole v. Lutz & Schmidt, Inc., 273 Ky. 586, 117 S.W.2d 575.

volves a mental state of willingness.[3] This case affords an example of that distinction.

In his essay on "Voluntary Assumption of Risk,"[4] Bohlen says, "The defense of contributory negligence is quite distinct. Negligence involves the idea of misconduct, a failure to measure up to the standard of that ideal personage the normal social man; assumption of risk does not." The same author, in an article on "Contributory Negligence,"[5] distinguishes between that defense and the defense of assumed risk in this manner: "The plaintiff's inability to recover where the danger being known is voluntarily encountered is not based upon any thought that in so doing he has acted improperly, or has fallen away from the normal standard of proper behavior." He adds that, "Contributory negligence excludes the idea of deliberation."

Mr. Justice Holmes, speaking for the Supreme Court in Schlemmer v. Buffalo, Rochester & Pittsburgh R. Co., 205 U.S. 1, 12, 27 S.Ct. 407, 409, 51 L.Ed. 681, distinguishes in quite a different way between assumption of risk and contributory negligence: " * * * the practical difference of the two ideas is in the degree of their proximity to the particular harm. The preliminary conduct of getting into the dangerous employment or relation is said to be accompanied by assumption of the risk. The act more immediately leading to a specific accident is called negligent. But the difference between the two is one of degree rather than of kind; * * *."

■ Although there is no evidence in the record that Mrs. Eaton was guilty of any act or omission which contributed immediately to the happening of the accident, there was evidence before the jury from which it could have concluded that Weber's negligence caused the injuries, that his negligence was brought about by the drinks which he had taken a short time before the accident, and she knew of his drinking when she entered the car. The jury should

have been told, therefore, that if it believed the evidence and drew therefrom the conclusions to which reference has just been made, it could not find a verdict for Mrs. Eaton.

■ Whether her act of entering the car, knowing the driver's condition, could properly be called contributory negligence under the proximity test of the Schlemmer case is unimportant in the facts of this case. It amounted to what the learned Justice called "the preliminary conduct of getting into the dangerous * * * relation." All authorities would agree that if Mrs. Eaton accompanied Weber when she knew of his drinking and was injured through negligence on his part brought about by the alcohol he had taken, she assumed the risk when she voluntarily rode with him. It was error not to instruct the jury to that effect.

■ Since Weber and Mrs Eaton testified that he was driving slowly and carefully, and since he said that he did not turn onto the car tracks and knew of no reason for the skid, it would not have been improper to give an unavoidable accident instruction by informing the jury that if the accident was merely the result of misadventure, without fault on the part of anybody, there could be no recovery. But we do not regard the omission of such an instruction, in the factual situation herein involved, as reversible error. Counsel were allowed to argue to the jury that the accident was unavoidable. Such an argument necessarily was to the effect that nobody had been negligent. The jury understood from the court that the appellant could not be liable unless her agent's negligence caused the injuries, so the appellant had the benefit of the unavoidable accident theory.[6]

■ The appellant also asserts that the court erred in imperatively telling the jury to find that Mrs. Eaton could not have been contributorily negligent because the negligence of the driver, if any, could not

---

[3] 38 Am.Jur. § 172.

[4] Selected Essays on the Law of Torts, selected from the Harvard Law Review and published in 1924 by the Harvard Law Review Association, p. 500.

[5] Id. at p. 482.

[6] Compare Globe Furniture Co. v. Gately, 51 App.D.C. 367, 279 F. 1005, 1008, where this court said: "The court declined to give a request which in substance said that, if the accident could not have been avoided by the exercise of due care on the part of the driver of the truck, the jury's verdict should be for the defendant. This was but another way of saying that plaintiffs could not recover, unless they established that the driver was negligent. The subject was

580

be imputed to her.[7] A passenger in an automobile may be contributorily negligent because of his own failure to use due care, quite apart from the imputation to him of the driver's negligence.[8] The instruction, therefore, was not a correct statement of the law. Moreover, such an instruction was, in the facts of this case, not only unnecessary but also plainly prejudicial to the appellant.

Because of the errors which we have pointed out, it is necessary that the judgment of the District Court be set aside and that the cause be remanded for a new trial.

Reversed

fully covered by instructions given, and hence no error resulted from the refusal of the prayer. Finney v. District of Columbia, 47 App.D.C. 48, L.R.A.1918D, 1103; Sinclair v. United States, 49 App. D.C. 351, 265 F. 991; Smith v. United States, 50 App.D.C. 208, 269 F. 860; Henry v. United States, 50 App.D.C. 366, 273 F. 330."

[7] The criticized instruction is as follows: "You are reminded of the fact that the vehicle in which the plaintiff Gertrude M. Eaton was riding at the time of the accident in question was then being operated by the agent of the defendant, Hazel Weber, and you are instructed that the driver's negligence, if any, may not be imputed to the plaintiff and that therefore, you shall find that there was no contributory negligence on the part of the plaintiff."

[8] In Miller v. Union Pacific R. Co., 290 U.S. 227, 54 S.Ct. 172, 173, 78 L.Ed. 285, the Supreme Court said: "Whether a passenger or guest in a public or private conveyance, having no control over its movement, may be denied a right of recovery for personal injury or death on the ground of contributory negligence, depends upon his own failure to exercise a proper degree of care, and not upon that of the driver. * * * the federal rule is definitely settled that the burden of proving such contributory negligence rests, in all cases, upon the defendant."