**In re Irwin MINNINBERG, Respondent.**

No. 84–60.

District of Columbia Court of Appeals.

Argued Sept. 11, 1984.

Decided Sept. 25, 1984.[1]

Michael Frisch, Asst. Bar Counsel, Washington, D.C., for petitioner. Joseph L. Mayer, Executive Attorney, Washington, D.C., filed the Report and Recommendation of the Board on Professional Responsibility. Wallace E. Shipp, Jr., Deputy Bar Counsel, Washington, D.C., also entered an appearance for petitioner.

John W. Karr, Washington, D.C., for respondent.

Before FERREN and PRYOR, Associate Judges, and YEAGLEY, Associate Judge, Retired.

PER CURIAM:

This disciplinary matter is before the court on a Report and Recommendation of the Board on Professional Responsibility, pursuant to D.C. Bar R. XI, § 7(3), recommending that respondent be disbarred. The Board's report was based upon evidence adduced in a proceeding before a Hearing Committee involving complaints against respondent. We accept the findings of fact made by the Board and adopt the recommended disposition.

Two complaints were filed against respondent, each arising from a separate incident. In the first complaint, it was alleged that respondent violated DR 1–102(A)(3),[2] (4)[3] and DR 9–103(A)[4] by misappropriating funds received in settlement of the personal injury action of his client, Mrs. Spence. It was also alleged that he violated DR

---

1. The decision in this case was originally released as a Memorandum Opinion and Judgment, but is being published pursuant to this court's order granting petitioner's motion for publication.

2. "A lawyer shall not ... [e]ngage in illegal conduct involving moral turpitude ...."

3. "A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

4. "All funds of clients paid to a lawyer or law firm, ... shall be deposited in one or more identifiable bank accounts ...."

6–101(A)(3),[5] DR 7–101(A)(1),[6] (2),[7] and (3) [8] by neglecting and failing to advance the lawful objectives of Mrs. Spence's case, and violated DR 2–106(A),[9] by charging Mrs. Spence a fee which was excessive in light of his conduct and the results obtained.

In the second complaint, respondent was charged with dishonest conduct in violation of DR 1–102(A)(4).[10] It was alleged that respondent converted to his own use funds which he received in payment of a fee but which he had previously assigned to the Continental Bank, Philadelphia, Pennsylvania as collateral for a loan, and which he had agreed to hold in trust for the bank.

We observe that on August 18, 1981, a "contact member" of a Hearing Committee reviewed Bar Counsel's petition in the second complaint and disapproved the petition. Bar Counsel appealed. On November 18, 1981, Hearing Committee Number Six denied Bar Counsel's Petition to Reconsider Decision of Contact Member, on the grounds that this was a civil matter and did not warrant institution of disciplinary proceedings. One member of the three member committee filed a lengthy dissent to the Committee's opinion. On December 21, 1981, Bar Counsel applied to the Board for reversal of Hearing Committee Number

Six's decision. In February 1982, the Board overruled the Committee's conclusion and permitted the filing of the petition against respondent.

With respect to the first complaint, the Hearing Committee found that respondent's neglect of his client's interests violated DR 6–101(A)(3),[11] and DR 7–101(A)(1),[12] (2),[13] and (3) [14] and that, in view of his failure to pursue Mrs. Spence's interests, his fee was unreasonable and in violation of DR 2–106(A).[15] However, the Committee also concluded that respondent did not intend to embezzle or steal Mrs. Spence's funds and accordingly was not guilty of conduct involving dishonesty, or moral turpitude.[16] The Committee made no findings with respect to the charge that respondent had commingled funds in violation of DR 9–102(A).[17] With respect to the second complaint, the Committee concluded that the basis for the action was only a civil breach of contract and was not properly the subject of disciplinary proceedings.

On January 3, 1984, the Board adopted some of the Committee's findings but concluded, in contrast to the Hearing Committee, that respondent did violate DR 1–102(A)(3),[18] and (4),[19] and DR 9–102(A) [20] when he withdrew Mrs. Spence's settle-

---

5. "A lawyer shall not [n]eglect a legal matter entrusted to him."

6. "A lawyer shall not intentionally ... [f]ail to seek the lawful objectives of his client through reasonably available means ...."

7. "A lawyer shall not intentionally ... [f]ail to carry out a contract of employment entered into with a client for professional services ...."

8. "A lawyer shall not intentionally ... [p]rejudice or damage his client during the course of the professional relationship ...."

9. "A lawyer shall not [enter] into an agreement for, charge, or collect an illegal or clearly excessive fee."

10. See supra note 3.

11. See supra note 5.

12. See supra note 6.

13. See supra note 7.

14. See supra note 8.

15. See supra note 9.

16. The Hearing Committee arrived at this conclusion despite their finding that respondent "was aware of his responsibilities to his client" and that "[t]he funds were actually commingled with [the respondent's] own and disbursed for personal use." Moreover, the Committee specifically rejected the excuses respondent put forth for his behavior, concluding "[r]espondent's explanation of the handling of the funds ... was incredible." Hearing Committee Report, p. 9.

17. See supra note 4.

18. See supra note 2.

19. See supra note 3.

20. See supra note 4.

ment funds and diverted them to his own use. In addition, the Board concluded with respect to the second complaint that respondent's assignment to Continental Bank created a trust relationship with respect to the funds assigned. Respondent's later use of those funds for his own personal expenses without notifying either the Bank, or Mr. Bedford, the guarantor of the loan he received based on the assignment, was a breach of the trust relationship and constituted dishonest conduct in violation of DR 1–102(A)(4).[21] The Board recommended that respondent be disbarred for his violations of the Disciplinary Rules.

■ Given the language of respondent's loan agreement with the bank, it is clear that respondent breached a trust where his obligations under the assignment clause were concerned.[22] Respondent converted to his own use funds unequivocally pledged to the bank. In its recommendation that respondent be disciplined for breach of this trust relationship, the Board made a passing reference to a related provision of the Criminal Code. This language in the Board's recommendation is precatory. It is well established that a lawyer's actions do *not* have to reach the level of criminal conduct before disciplinary action may be taken. *Cf. In re Quimby,* 123 U.S.App. D.C. 273, 274, 359 F.2d 257, 258 (1966).

D.C.Bar R.XI, § 7 provides the appropriate standard for our review of the Board's Report and Recommendation:

[The] Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.

*See also In re Smith,* 403 A.2d 296, 302–03 (D.C.1979) (substantial evidence standard).

■ We have reviewed the Board's findings and the record of the proceedings before the Hearing Committee. We conclude that the Board's findings and recommendations are supported by substantial evidence and that the recommended sanction of disbarment is appropriate and consistent with the punishment given for comparable misconduct in other cases.[23] Misappropriation by an attorney of a client's (or other) funds is a most serious offense. As the court noted in *In re Quimby, supra,* 123 U.S.App.D.C. at 274, 359 F.2d at 258, "such misconduct demonstrates absence of the basic qualities for membership" in the legal profession, and accordingly "disbarment should ordinarily follow as a matter of course." This court has repeatedly adopted the Board's recommendation of disbarment in cases involving misappropriation of funds. *See, e.g., In re Burton,* 472 A.2d 831 (D.C.1984) (per curiam) (commingling and misappropriation of funds held in fiduciary capacity warrant-

---

**21.** *See supra* note 3.

**22.** The loan agreement between Continental Bank and respondent, dated October 29, 1978, and signed by respondent, provides in pertinent part that respondent's $25,000 future legal fee represents "collateral security for any and all liabilities and obligations of the Assignor to the Bank." The agreement also stipulates that "the Assignor also agrees that any payment or instrument for the payment of money which the Assignor may receive on account of said contract shall be held in trust by the Assignor as the property of the Bank and shall forthwith be delivered to the Bank in the form received." Petitioner's Exhibit 1(c).

**23.** The Hearing Committee placed heavy emphasis on respondent's mental condition and recommended that respondent only be suspended

from the practice of law under D.C.Bar R.XI, § 16(2) and (5).

It is significant that the Committee found that respondent presented no evidence showing that at any relevant time he lacked the mental capacity to understand the nature of his acts and conform his conduct to law. Mental state while a potentially mitigating factor in determining sanctions, is *not* an excuse for illegal or unprofessional conduct. *See In re Willcher,* 404 A.2d 185 (D.C.1979) (mental state and financial difficulties of respondent while relevant do not excuse theft); *Henry v. United States,* 50 App.D.C. 366, 273 F. 330 (1921) (intent at time of conversion to restore funds is not a defense to embezzlement).

ed disbarment). Here respondent's misappropriation of funds is compounded by other misconduct and violations of disciplinary rules as found by the Board. *See In re Haupt,* 444 A.2d 317 (D.C.1982) (per curiam); *In re Burka,* 423 A.2d 181 (D.C. 1980) (en banc). Therefore, it is

ORDERED that Irwin Minninberg be, and hereby is, disbarred from the practice of law in the District of Columbia effective *30* days from the date of this order. *See* D.C.Bar R.XI, § 19(3).

*So ordered.*