**In the Matter of David M. FRANKLIN, Respondent.**

No. 85–1643.

District of Columbia Court of Appeals.

Submitted April 15, 1986.
Decided April 30, 1986.*

James W. Cobb, Washington, D.C., was on the brief, for respondent.

Thomas H. Henderson, Jr., Bar Counsel, and Samuel McClendon, Asst. Bar Counsel for Special Litigation, Washington, D.C., were on the brief, for the Office of Bar Counsel.

Before PRYOR, Chief Judge, NEBEKER, Associate Judge, and PAIR, Senior Judge.

ORDER

PER CURIAM.

In this disciplinary case, respondent is charged with neglecting a legal matter, dishonesty, and misappropriation of client funds. The Board on Professional Responsibility has recommended that the respondent be disbarred from the practice of law. We conclude that respondent has violated Disciplinary Rules DR 9–103(A) (failure to preserve identity of funds of a client), DR 6–101(A)(3) (neglect of a legal matter), and DR 1–102(A)(4) (conduct involving dishonesty). We, therefore, agree with the Board's recommendation of disbarment, as set forth more fully in the Board's Report and Recommendation appended hereto and incorporated herein by reference.

Accordingly, it is ORDERED that respondent, DAVID M. FRANKLIN, is disbarred from the practice of law in the District of Columbia effective thirty (30) days from the date of this order. D.C. Bar R. XI § 19(3). *See In re Burton*, 472 A.2d 831 (D.C.), *cert. denied*, 469 U.S. 1071, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *In re Minninberg*, 485 A.2d 149 (D.C.1984); *In re Burka*, 423 A.2d 181 (D.C.1980) (en banc).

APPENDIX

DISTRICT OF COLUMBIA COURT OF APPEALS BOARD ON PROFESSIONAL RESPONSIBILITY

Bar Docket Number: 48–83

In the Matter of David M. Franklin, Respondent.

REPORT AND RECOMMENDATION OF THE BOARD ON PROFESSIONAL RESPONSIBILITY

This matter is before the Board on Professional Responsibility on the report of Hearing Committee Number Five, dated June 26, 1985. The Board heard oral argument in this case on October 10, 1985.

An evidentiary hearing was held on January 3, 1985, before the Hearing Committee. Respondent was out of the country and consequently, not present at the hearing. He was, however, represented by counsel, James W. Cobb, Esquire.

Respondent's motion for a continuance of the hearing date—based simply on the fact that he would be out of the country on the day of the hearing—was denied by the Committee. The motion was denied on the grounds, principally, that Respondent gave no sufficient representation as to why he had chosen to leave the country, well knowing that the hearing date had been set

---

\* The order in this case was entered on April 30, 1986. It is being published pursuant to this court's order granting the motion for publication.

(Hearing Committee transcript, page 6).[1] In addition, Respondent had not responded to the petition of Bar Counsel. As a result, it was not clear that Respondent, were he present at the hearing, would be contesting the allegations of the petition (*Id.*).

Both Respondent and Bar Counsel were provided an opportunity to supplement the record after the hearing and both did so.

The Hearing Committee found by clear and convincing evidence that Respondent had violated DR 9–103(A)—misappropriation, DR 1–102(A)(4)—dishonesty, and DR 6–101(A)(3)—neglect. The Committee recommended that Respondent be disbarred from the practice of law.

The Board on Professional Responsibility agrees with the findings of the Hearing Committee and the recommended sanction.

### FACTS

On May 20, 1981, International General Resources W.L.L. (IGR) entered into a loan agreement with Darwish International N.V., Inc., (Darwish), whereby IGR loaned Darwish $1,105,000 to be secured by a security deed from Darwish to IGR on 130 lots located in Henry County, Georgia (Bar Counsel Exhibit (BE) 5 and 6).

The loan agreement provided that the lots comprising the secured property would be released from the security deed as they were sold by Darwish and repayment was made to IGR. Under paragraph 7 of the agreement, IGR was expressly required to deliver executed quitclaim deeds for each lot within the secured property to the escrow agent, Pioneer National Title Insurance Company, "[s]imultaneously with execution and delivery of the [executed] security deed...." (BE 5). Upon delivery of the executed quitclaim deeds, the escrow agent would record IGR's security interest in the property (BE 14).

On April 22, 1981, IGR gave Respondent a Power of Attorney authorizing him, *inter*

*alia*, to: 1) execute the loan agreement on behalf of IGR; 2) execute the quitclaim deeds; and 3) deliver the quitclaim deeds to the escrow agent, thereby insuring that the security deed protecting IGR would be recorded (BE 4).

Pursuant to the loan agreement, Darwish executed and notorized the security deed on August 14, 1981 (BE 8).

On August 17, 1981, Darwish delivered the deed to the escrow agent (BE 7). That same day Darwish sent to Respondent the quitclaim deeds (BE 8). It was then Respondent's responsibility to execute the quitclaim deeds and deliver them to the escrow agent so that the security deed could be recorded, thereby protecting IGR's interest.

Between August and November, 1981, Respondent received repeated inquiries from IGR and Darwish asking why he had not executed the quitclaim deeds so that the security deed could be recorded (BEs 9, 10, 11, 12 and 19).

In June 1982—10 months after it was Respondent's duty to act—Respondent received a letter from the escrow agent informing him that the security deed remained unrecorded. Respondent did nothing. IGR's $1,105,000 loan to Darwish remained unsecured (BE 14).

On December 18, 1982—over 16 months after it was Respondent's duty to act—IGR revoked the Power of Attorney given to Respondent (BEs 16 and 17).

Four days later, on December 22, 1982, new counsel had executed the quitclaim and IGR's security was recorded (BE 18).

In addition to authorizing Respondent to act on IGR's behalf in connection with the loan agreement, the Power of Attorney from IGR to Respondent authorized Respondent to "collect, receive, and recei[ve] any and all monies due the Corporation under the terms and conditions of the loan agreement, whether as repayment of prin-

---

1. The petition of Bar Counsel was mailed on November 8, 1984, by certified and regular mail. A letter dated November 13, 1984, from the Executive Attorney was sent by regular mail notifying Respondent of the January 3, 1985, hearing date.

cipal or payment of interest, or otherwise, and to remit same as provided under the terms and conditions of the Loan Agreement." (BE 4).

On or about June 8, 1982, Respondent received from Darwish a check for $21,282 made payable to IGR (BE 23). This check represented the first payment due IGR under the loan agreement (BE 19).

On June 9, 1982, Respondent deposited the check into an account at the First National Bank of Atlanta, No. 16,061,302, labeled "David M. Franklin and Associates Trust Account" (BEs 24 and 24A).

David M. Franklin and Associates is a management and consulting firm. At the time, Respondent's law firm was Franklin & Axam. The law firm had a distinct and separate escrow account, but Respondent did not deposit the IGR check into that escrow account.

On the day Respondent deposited the check for $21,282 in the "David M. Franklin and Associates Trust" account, his balance was overdrawn by $1,602.62 (BE 24). Thus, immediately after Respondent deposited the check, the balance in the account was $19,680.38 (BE 24).

That same day, checks against the account for $50 and $7,000 cleared, causing the balance in the account to fall to $12,630.38, a sum well below the $21,282 which Respondent owed IGR (BE 24).

Subsequently, Respondent made other withdrawals from the account not related to his representation of, and not authorized by, IGR. On July 12, 1982, the balance fell to $11.60 (BE 28). The account was overdrawn in October and December of 1982 (BEs 28 and 30).

On December 15, 1982, Respondent wrote a check to IGR for $14,795, a sum which represented the difference between the $21,282 Respondent had received on IGR's behalf less $6,487 which Respondent

claimed as a fee or "disputed offset" (BE 32).

IGR deposited the check for $14,795 but it was returned due to insufficient funds in Respondent's trust account (BE 32).[2]

## DISCUSSION

The Board adopts the Hearing Committee's report, finding that Respondent neglected a legal matter entrusted to him (DR 6–101(A)(3)), that Respondent failed to maintain trust funds of a client on deposit (DR 9–103(A)), and that Respondent used his client's funds for purposes unrelated to the subject matter of Respondent's employment, which use constituted illegal conduct involving dishonesty.

The record in this case shows that Respondent was given a Power of Attorney by IGR to handle a loan transaction in which he was required to secure a $1,105,000 debt on IGR's behalf—and that he did not do it. For approximately 16 months, Respondent allowed this loan to remain unsecured and unprotected—despite reminders from his client, the escrow agent and even the borrower.

The ABA Committee on Ethics and Professional Responsibility Informal Opinion No. 1273 (1973) states:

Neglect involves indifference and a consistent failure to carry out the obligations which the lawyer has assumed to his client or a conscious disregard for the responsibility owed to the client. The concept of ordinary negligence is different. Neglect usually involves more than a single act or omission.

In the Board's view, Respondent's neglect in this case falls squarely within the parameters of the above-cited opinion. The record clearly reflects "conscious disregard for the responsibility owed to the client" and that Respondent's neglect involved "more than a single act of omission." For 16 months, he allowed his client to linger in

---

**2.** Respondent ultimately paid IGR $15,550.50 by means of a cashier's check on February 10, 1983.

a position of potential and substantial prejudice. Respondent had a duty to his client—a duty which he consistently failed to discharge over an extended period of time.

The District of Columbia Court of Appeals has defined misappropriation as:

> any unauthorized use of client's funds entrusted to him, including not only stealing but also unauthorized temporary use for the lawyer's own purpose, whether or not he derives any personal gain or benefits therefrom.

*In re Harrison,* 461 A.2d 1034, 1036 (D.C. 1983).

There is no question that Respondent misappropriated IGR's funds. On the day Respondent deposited the check to IGR for $21,282 into his management and consulting firm's trust account, the account was overdrawn by $1,601.62. Misappropriation occurred at that very moment. Once an attorney's trust account falls below that which he owes his client, misappropriation has occurred.

Respondent was fully aware that he had misappropriated his client's funds. In his letter of September 26, 1983, responding to the initial complaint, Respondent included as Attachment C to his letter a copy of a bank statement. This same document was submitted at the hearing by Bar Counsel as Exhibit 24. A comparison of Respondent's Attachment C and Bar Counsel's Exhibit 24 reveals that most of the right hand column of the statement entitled "Balance this Statement" is missing from Respondent's Attachment C. It appears from the copy of the statement submitted by Respondent that a piece of paper was used to cover the column. This column would have shown, as Bar Counsel Exhibit 24 shows, that Respondent's account was overdrawn by $1,601.62 at the time the check to IGR was deposited.

Respondent's misappropriation of his client's funds also violated other Code provisions. The Court of Appeals stated in *In re Burka,* 423 A.2d 181 (D.C.1980), "that the unauthorized withdrawals of client funds" for the attorney's own use constituted dishonest conduct. Similarly, in *In re Hines,* 482 A.2d 378 (D.C.1984), the Court found that the commingling of funds under circumstances where the account balance fell below the amount owed the client, was sufficient to permit an inference of intention to use the client's funds for the lawyer's own purposes—an intention which was sufficient to constitute dishonesty under the disciplinary rules.

The Hearing Committee found by clear and convincing evidence that the Respondent's use of IGR's funds for his own purposes and without the authority of IGR demonstrates that Respondent acted dishonestly. The Board agrees with the Commission's findings.

In his defense, Respondent raises four principal arguments.

First, Respondent claims that he was not acting as a lawyer for IGR. He contends at the oral argument that his relationship to IGR was that of "partner" or "broker."

The Board rejects this defense. The record is abundantly clear that Respondent was acting as an attorney for IGR.

On September 26, 1983, Respondent answered IGR's complaint (BE 2). The answer was on the stationery of "Franklin & Axam, Attorneys at Law." Respondent stated, *inter alia,* as follows:

* "In late April 1980, Al-Marzouk retained my firm to advise him financially and legally...." *Id.* at 1.
* "At this point my legal fees were unpaid for over nine (9) months." *Id.* at 2.
* "At this point my legal fees were unpaid for the previous twelve (12) months." *Id.* at 2.
* "In September one of Al-Marzouk's assistants called from Kuwait about a new legal matter in California regarding auto parts. I discussed with the assistant the fact that I was in receipt of funds, and also had a legal bill due, and asked what to do." *Id.* at 3.

* " ... I gave an accounting of the funds and, a description of legal services and expenses...." *Id.* at 4.

* "In retrospect I should have withdrawn from the case...." *Id.* at 4.

On December 15, 1982, and May 13, 1983, Respondent, using stationery labeled "Franklin, Axam & Ashburne," billed IGR for the legal work Respondent claimed to have performed in connection with the Henry County property (BE 36).

Respondent's own words prove that he was acting as a lawyer in his dealings with IGR.

Second, Respondent contends that he was suspicious of Darwish and thought that IGR was being defrauded. As the Hearing Committee correctly points out, Respondent—assuming his suspicions were validly based—had two choices: to follow his client's specific instructions and protect their interests or to withdraw from the case. He did neither.

The Hearing Committee found by clear and convincing evidence that Respondent neglected this case—and the Board agrees.

Third, Respondent argues that he did not execute the quitclaim deeds because he was contemplating setting up a corporation in the Antilles in order to secure favorable tax treatment for his client.

Whether or not the formation of such a corporation would have been favorable to IGR, Respondent neglected to resolve this issue during the 16 months when IGR's security interest was unrecorded and unprotected. Respondent contends that the issue remained unresolved because of his difficulties in obtaining an answer from IGR.

Again, Respondent's choices were to either do what his client asked him to do—or to withdraw.

In a report and recommendation adopted by the Court of Appeals, the Board has said:

> if the failure of cooperation on the part of his clients had completely stymied respondent's efforts on their behalf, then he had a responsibility, after making reasonable efforts to secure their cooperation, *to withdraw from representing them.* What he could not do was to continue to represent them and at the same time to continue to fail to take any steps to protect their interests.

*In re Banks,* 461 A.2d 1038, 1041 (D.C. 1983) (emphasis added).

The evidence is contrary to Respondent's argument, and the Board rejects his defense.

Fourth, Respondent argued at the oral argument that he was denied his right of confrontation because the complainant (his client) was not called by Bar Counsel as a witness at the evidentiary hearing.[3] Bar Counsel has the burden of proof in a disciplinary proceeding. *See* Board Rule 10.4. Bar Counsel also has the discretion to prove his case in any manner that he chooses. In the instant case, Bar Counsel chose to meet this burden through the introduction of documentary evidence. The Hearing Committee found that Bar Counsel had proven by clear and convincing evidence that Respondent had violated several disciplinary rules (DR 9–103(A), DR 1–102(A)(4) and DR 6–101(A)(3)). The Board agrees.

## SANCTION

The sanction in this case has not been a difficult one at which to arrive. We recommend that Respondent be disbarred from the practice of law.

The usual sanction for misappropriation of funds absent extenuating circumstances is disbarment. *See In re Burton,* 472 A.2d 831, 848 (D.C.1984); *In re Quimby,* 123

---

**3.** Respondent had the opportunity to call any witness to testify at the evidentiary hearing. He did not avail himself of this opportunity. In addition, at the conclusion of the hearing held on January 3, 1985, the Chairman informed Respondent's counsel that he could move for leave to call witnesses (Hearing Committee Transcript, page 74). Respondent also did not file such a motion.

U.S.App.D.C. 273, 274, 359 F.2d 257, 258 (1966). There are no extenuating or mitigating circumstances in this case to justify a lesser sanction.

Moreover, the Board has not hesitated to recommend disbarment when a finding of misappropriation is compounded by violations of other disciplinary rules. *See In re Minninberg*, 485 A.2d 149, 152 (D.C.1984). In the case now before the Board, Respondent's misconduct not only constituted misappropriation but also dishonesty and the gross neglect of a legal matter entrusted to him.

Respondent's conduct is clearly the type of behavior the disciplinary rules are designed to deter. Accordingly, we recommend that Respondent be disbarred from the practice of law.

BOARD ON PROFESSIONAL RESPONSIBILITY

By: /s/ Ann Cunningham
ANN CUNNINGHAM

DATE: November 4, 1985

All members of the Board concur in this report and recommendation except Mr. Miller, Dr. Alexander and Mr. Carter, who did not participate.