### In the Matter of Hugh M. WADE, Respondent.

### No. 84-1161.

District of Columbia Court of Appeals.

Argued Sept. 16, 1986.
Decided May 29, 1987.

Clark U. Fleckinger II, Columbia, Md., for respondent.

Elizabeth J. Branda, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., was on brief, for the Bd. on Professional Responsibility.

Before PRYOR, Chief Judge, and MACK and ROGERS, Associate Judges.

PRYOR, Chief Judge:

In this disciplinary matter, Hearing Committee Number Seven (Hearing Committee) found that respondent Hugh M. Wade had violated DR 1-102(A)(3),[1] (4),[2] and DR 9-103(B)(4)[3] by misappropriating and converting to his own use money entrusted to him by a client. The Hearing Committee recommended a sanction of disbarment, and further recommended that Mr. Wade be ordered to make restitution to his client in the amount of $4,531.72.[4] The Board on Professional Responsibility (the Board) agreed with the findings and recommenda-

---

1. "A lawyer shall not ... [e]ngage in illegal conduct involving moral turpitude...."

2. "A lawyer shall not ... [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

3. "A lawyer shall ... [p]romptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."

4. The Hearing Committee also found violations of DR 3-101(B) (practicing law in a jurisdiction in violation of its regulations); DR 2-102(A)

(use of a letterhead containing false or misleading statement); DR 9-103(A) (failure to properly preserve identity of client's funds); and DR 1-102(A)(4), (5) ("conduct involving dishonesty, fraud, deceit, or misrepresentation" and "conduct that is prejudicial to the administration of justice" in respondent's misrepresentations to Bar Counsel that he had disbursed certain funds to his client). The Hearing Committee's recommendation of disbarment, however, was based on respondent's violations of DR 1-102(A)(3), (4), and DR 9-103(B)(4).

tions of the Hearing Committee, and recommended that respondent be disbarred.[5] Before this court, respondent asserts that the Board lacks jurisdiction in this matter and, in the alternative, that the Board's findings are unsupported by substantial evidence, and the recommended sanction of disbarment is unwarranted. We disagree with respondent's contentions, and, accordingly, we adopt the Board's recommendation.

## I

The evidence against respondent before the Hearing Committee consisted of the testimony of respondent's client, supported in part by documentary evidence. Respondent's client testified that she and respondent had been romantically involved in 1975 and 1976 while both were living in Boston, Massachusetts, but that their relationship ended in 1976. While she and respondent did not share bank accounts or living quarters, they did share some expenses.

In April 1979, respondent's client's mother died, and it became respondent's client's responsibility to sell her mother's car as well as the house in which her mother had been living. Since she was about to move to North Carolina to attend graduate school, she consulted respondent concerning the money she expected to receive. Respondent agreed to handle the sale of the house and car, and suggested that his client establish a trust with the money she was to receive from the sale of the house. He refused to accept a retainer for his services, but did accept $332, allegedly for administrative expenses in setting up the trust.

At respondent's suggestion, his client transferred all her savings from her account in one Boston bank to respondent's bank also in Boston and gave him power of attorney to handle deposits and withdrawals at that bank. According to their agreement, respondent was to send his client money in North Carolina as she needed it.

When his client's mother's car was sold, respondent, in his capacity as her attorney, received $600 in proceeds which he deposited in his client's savings account. The sale took place in Massachusetts. Soon thereafter, however, respondent withdrew $500. Respondent neither sent his client the money nor expended it on her behalf. In September 1979, when she questioned respondent about the $10 balance of her account, respondent's client was told that he deposited the money in another account that paid higher interest.

When the house in which respondent's client's mother had been living was sold, the buyer made no down payment, but agreed instead to make monthly payments on a second mortgage. The house was located in Massachusetts; the sale took place there as well. Because of this arrangement, no trust was established, and respondent, acting as her attorney, never sent his client the $500 deposit or several monthly payments on the mortgage he received.

In January and August 1980, respondent closed out his client's high interest accounts of more than $1,000 each by executing withdrawal slips in his own handwriting. When his client discovered the accounts had been closed, she asked respondent about the matter. He stated that he had changed the accounts to new accounts that yielded higher interest. Still, except for $300 respondent sent his client in 1980, his client received no money from her attorney.

In January 1981, respondent's client asked respondent to send her all of her money, and to return an insurance policy she had left with him for the purpose of changing the beneficiary. Respondent did not comply with the request and did not respond to subsequent letters seeking the return of the funds.

In January 1982, respondent's client obtained a judgment against him in Massachusetts for more than $8,000, and agreed to accept respondent's offer to pay $4,000

---

5. Finding that the Hearing Committee's recommended order that respondent make restitution in the amount of $4,531.72 "would not ... serve a useful purpose," the Board did not include this order in its recommended sanction.

in settlement of the judgment. Respondent never paid his client the $4,000.

In 1983, a disciplinary proceeding was instituted against respondent based on his alleged misconduct.

## II

Before reviewing the Board's Report and Recommendation, we address respondent's challenge to the disciplinary authority of the Board. Respondent contends that the Board lacks jurisdiction to proceed against him because the interplay among D.C.Code §§ 11–2501, –2502 (1981) and D.C.Bar R. XI must be interpreted by this court as meaning that the Board may only proceed against attorneys who are practicing law in the District, whether the alleged violation is related to that practice or not, and that "practicing law in the District" is not synonymous with "member of the D.C. bar."

The record reveals that all of the conduct complained of occurred in the Commonwealth of Massachusetts, that neither the complainant nor the respondent were residents of the District of Columbia, and that respondent neither maintained a law office nor actively represented clients in the District of Columbia. It is also clear that none of the property alleged to have been misappropriated by respondent was located in the District of Columbia.[6]

D.C.Code § 11–2501(a) provides:

The District of Columbia Court of Appeals shall make such rules as it deems proper respecting the examination, qualification and admission of persons to membership in its bar, and their censure, suspension, and expulsion.

D.C.Code § 11–2502 provides in part:

The District of Columbia Court of Appeals *may censure, suspend from practice, or expel a member of its bar* for crime, misdemeanor.... [Emphasis added.]

While these Code provisions create in the court the power to establish rules for managing its bar, it is D.C.Bar R. XI, § 1 that actually creates and defines the scope and duties associated with the disciplinary authority of this court and the Board on Professional Responsibility. Rule XI, § 1 reads in relevant part:

Any attorney who *engages in the practice of law within the District of Columbia* as defined in Rule [49(b)(1)] of the General Rules of the Court ... is subject to the disciplinary jurisdiction of this Court and its Board on Professional Responsibility. [Emphasis added.]

Accordingly, while it may be true that this court could have created broader authority for the Board without thereby overstepping the congressionally established bounds, this court, by adopting Rule XI, limited the authority of the Board to disciplinary actions against attorneys who are "engaged in the practice of law within the District of Columbia."

■ The particular facts of this case require that we reject respondent's contentions. Respondent was admitted to the District of Columbia Bar on November 25, 1975, and he maintained an "active" status membership from that date to November 30, 1983. From November 30, 1983 to March 8, 1984 and again from November 30, 1984 to December 19, 1984, respondent's membership was suspended for his failure to pay membership dues. In addition, each year for more than a decade, he timely filed registration statements as required by D.C.Bar R. II, § 2(1). Bar R. II, § 2(1) requires that every attorney who engages in the practice of law within the District of Columbia file an annual registration statement. Registration statements are not required of attorneys who are either not practicing law in the District of Columbia or who maintain an inactive membership status. By filing annual regis-

---

**6.** Before filing her complaint in the District of Columbia, respondent's client attempted to resolve her conflict in Massachusetts. As a result of these attempts, in 1981, the respondent entered into an agreement of Assurance and Discontinuance with the Attorney General of Massachusetts in lieu of the Attorney General commencing a civil action against him for practicing law without a license in the Commonwealth. In addition, in 1982, the Office of Bar Counsel in Massachusetts refused to pursue these allegations. As noted *supra*, respondent's client ultimately obtained a judgment against respondent and agreed to a settlement of $4,000.

tration statements, respondent was complying with a procedure required only of those engaged in the practice of law and, thereby, maintaining his "active status" or his eligibility to engage in the practice of law. Further, it is clear that an attorney who is not engaged in the practice of law within the District of Columbia is required to "advise, in writing, the Secretary of the Bar that he desires to assume inactive status and to discontinue the practice of law." Rule II, § 2(4). The record reveals that respondent never so advised the Secretary.

We note that these reporting requirements are, at least in part, dependent upon a system of self-classification. It is the individual attorney who decides what his membership status is to be, and it is the individual attorney who takes the initiative to maintain active status. In the case before us, respondent claims he is not subject to the disciplinary authority of the Board because he is not engaged in the practice of law in the District of Columbia; yet, at the same time, respondent has complied with the requirements for those attorneys who are practicing law and, indeed, has not complied with the requirements for those attorneys who are not practicing law or who have changed status from active to inactive membership. For this reason, we conclude that respondent for more than a decade intended to be considered or held himself out as an attorney engaged in the practice of the law. Having done so, he cannot now avoid the disciplinary authority of the Board. While we do recognize a distinction between mere eligibility to practice law in the District and actual practice of law, we note that respondent's behavior over the years, notwithstanding that he may not have had clients in the District, constitutes practicing law.

Thus, on the facts of this case and in light of respondent's continued and voluntary maintenance of active bar membership, we find that respondent is properly within the disciplinary authority of the Board as contemplated by Rule XI, § 1.

### III

D.C.Bar R. XI, § 7 provides the appropriate standard for our review of the Board's Report and Recommendation:

[T]he Court shall accept the findings of fact made by the Board unless they are unsupported by substantial evidence of record, and shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted.

*See also In re Smith,* 403 A.2d 296, 302–03 (D.C.1979) (substantial evidence standard).

■ We have reviewed the Board's findings and the record of the proceeding before the Hearing Committee. Given the ample factual record in this case, it is clear, as the Board found, that respondent "stole the money entrusted to him by [his client], including her bank accounts, the money received from the sale of her mother's car, and the payments received by respondent on the house." Thus, the Board's findings are supported by substantial evidence.

■ Moreover, we conclude that the recommended sanction of disbarment is appropriate and consistent with that given for comparable misconduct in other cases. As we stated in *In re Minninberg,* 485 A.2d 149, 151–52 (D.C.1984) (per curiam), "[m]isappropriation by an attorney of a client's (or other) funds is a most serious offense." Indeed, "such misconduct demonstrates absence of the basic qualities for membership" in the legal profession, and accordingly, "disbarment should ordinarily follow as a matter of course." *In re Quimby,* 123 U.S.App.D.C. 273, 274, 359 F.2d 257, 258 (1966). This court has repeatedly adopted the Board's recommendation of disbarment in cases involving misappropriation of funds. *See, e.g., In re Minninberg, supra,* 485 A.2d at 152 (conversion to own use of funds pledged to bank under trust agreement warranted disbarment); *In re Burton,* 472 A.2d 831 (D.C.1984) (per curiam) (commingling and misappropriation of funds held in fiduciary capacity warranted disbarment). We agree with the Board that "[t]here is, on the record, no reason why this normal sanction of disbarment should not apply." Accordingly, it is

ORDERED that Hugh M. Wade be, and hereby is, disbarred from the practice of

law in the District of Columbia effective thirty days from the date of this opinion.

*So ordered.*

ROGERS, Associate Judge, concurring: Although this opinion would constitute future notice, I write separately to indicate that I think Rule XI should be amended to incorporate the holding of this opinion. Our Rule should clearly state that a member of our Bar cannot escape disciplinary review here and retain a misleading unblemished record, notwithstanding admitted unauthorized practice elsewhere. By so amending our Rule, it would be in conformity with the disciplinary procedures in Maryland and Virginia. Rule BV1(a), MD. CODE ANN. (1986 Supp.) ("'Attorney' means any person admitted by the Court of Appeals to practice law."); Va.Sup.Ct. Rules, Part Six, Rule 6: IV, ¶ 13, 216 Va. 1143 (1976) ("'Attorney' means a member of the Virginia State Bar....").