**In re Thomas F. KENNEDY,**
**Respondent.**

**No. 86-1268.**

District of Columbia Court of Appeals.

Argued March 18, 1987.

Decided April 20, 1988.

---

David Epstein, with whom R. Hale Foote, Washington, D.C., was on the brief, for respondent.

Elizabeth A. Kohlman, Asst. Bar Counsel, with whom Thomas H. Henderson, Jr., Bar Counsel, Washington, D.C., at the time the brief was filed, was on the brief, for petitioner, the Office of Bar Counsel.

Before NEWMAN, BELSON, and ROGERS, Associate Judges.

ROGERS, Associate Judge:

The Board on Professional Responsibility ("the Board") found that the respondent Kennedy violated Disciplinary Rule (DR) 3–101(B)[1] by engaging in the practice of law while under suspension and DR 1–102(A)(4)[2] by (1) failing to remit to his law firm a retainer fee received from a firm client, (2) instructing another client of the firm to send payment to his new office after he had left the firm, and (3) misrepresenting his current salary to the loan office of a savings and loan institution. The Board also found that the seriousness of the conduct and the need for consistency, D.C.Bar R. XI, § 7(3), warranted a more stringent sanction than the ninety day suspension recommended by Bar Counsel and the Hearing Committee, and recommended that Kennedy be suspended from the practice of law for a year and a day.

Kennedy contends that he did not violate DR 1–102(A)(4) because he only engaged in noncriminal acts that were unrelated to the practice of law. He argues that, as evidenced by his abandonment of pursuit of a loan, he did not intend to deceive the bank and that the fee controversy was a private matter with his law firm. He also argues that the recommended sanction is excessive because it is inconsistent with the sanctions imposed in comparable cases, none of his acts led to the harm of any client, and he was unaware he was under suspension for failure to pay his Bar dues. We agree with the Board that Kennedy committed four violations of the rules, but find that the recommended sanction is inconsistent with those imposed in recent, comparable cases. In our view the Board failed to consider the relationship of these noncriminal acts to Kennedy's fitness to practice law, and overestimated the seriousness of Kennedy's failure to pay Bar dues. We conclude that the appropriate sanction is suspension for ninety days.

I. *Disciplinary Violations*

A. *Violation of DR 3–101(B)*

Kennedy was admitted to the practice of law in the District of Columbia on March

---

1. DR 3–101(B) provides that a lawyer shall not "practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction." D.C.Bar R. II, § 5 states

 If the annual dues of any member remain unpaid at the expiration of 90 days from the time when such dues are due and payable, the membership of such member *may be suspended* by the Board of Governors in the manner provided in the By-laws. No person whose membership is so suspended for nonpayment of dues shall be entitled to practice law in the District of Columbia during the period of such suspension. [Emphasis added.]

2. DR 1–102(A)(4) provides that a lawyer shall not, "Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

18, 1977. He was suspended from the active practice of law from December 15, 1981, until November 28, 1983, for his admitted failure to pay Bar membership dues. He actively practiced law in the District of Columbia during this period. Kennedy admitted that he was required to pay yearly dues to the District of Columbia Bar and that he knew he would be suspended for not paying those dues. Kennedy does not contest the findings that he violated DR 3–101(B).

### B. *Violations of DR 1–102(A)(4)*

*The Boyd and Patterson Matters.* In June of 1982, while Kennedy was associated with the law firm of Van Powers and Legal Associates, LaDonna Rowland Boyd retained him to represent her interests in a potential medical malpractice suit. She signed a retainer agreement and a release of medical records on forms of the Van Powers firm and tendered a $105 retainer fee. Kennedy did not open a file on the Boyd case, did not enter her name or the money received in the firm's log books, and did not remit the money to the firm.

In September of 1983, again while Kennedy was still associated with the law firm of Van Powers and Legal Associates, Dave Patterson retained Kennedy to represent him in a criminal matter. Kennedy completed his work for Patterson prior to February, 1984, when he left the law firm. Kennedy instructed Patterson to send the outstanding balance of the bill, $470, for work previously performed, to Kennedy's new office. Patterson did so, and Kennedy neither tendered the money to Van Powers nor informed his old firm of the payment.

Kennedy does not dispute this factual account on appeal,[3] but he contends with respect to the Patterson money that his relationship to Van Powers is still in dispute and that this internal dispute with his former firm neither affected his clients nor concerned the practice of law and, there-

fore, should not be subject to disciplinary inquiry. He maintains that he was a partner of Van Powers and was entitled to engage in self-help, with regard to a controversy over money, by retaining fees as a set-off.[4] There is substantial evidence in the record, however, that Kennedy was a salaried employee who owed his full time and attention to the firm and that firm practice was to remit all fee payments directly to the firm. The record also demonstrates that Kennedy directed Patterson to send the money to him before any specific money controversy with Van Powers arose. Kennedy's response that numerous clients considered him to be their attorney is unsurprising and irrelevant.

*The Bank Matter.* On June 28, 1983, Kennedy investigated the possibility of refinancing the mortgage on his residence through the Equitable Federal Savings and Loan Association. He admitted telling a bank employee that his annual salary was between $16,500 and $17,000 even though his actual salary at the time was approximately $11,000. He also admitted instructing a secretary at his law firm to verify the false information if the bank telephoned. Nevertheless he contends that a rule violation did not occur because the bank did not rely on his misstatement and he had a reasonable expectation that his salary would be increased to at least $16,500. Reliance is not essential to a finding of dishonesty, as opposed to criminality. *See In re Minninberg*, 485 A.2d 149, 151 (D.C. 1984). The misrepresentation here was admittedly material and dishonest. *See In re Reback*, 513 A.2d 226, 231 (D.C.1986) (en banc). However, Kennedy dropped his pursuit of the loan only after another member of his firm and his secretary expressed their concern over the lie.

The record also demonstrates that Kennedy had no reasonable grounds to believe he would shortly receive a salary increase and that, in any event, his representation

---

**3.** His sole response to the Boyd matter below was to deny that he had retained any funds.

**4.** As of the date the briefs were filed in the court, this dispute was pending resolution in the Circuit Court for Prince George's County, Mary-

land, *Kennedy v. Van S. Powers and Legal Associates,* CAL 85–11835. There does not appear to be a substantial likelihood that the resolution of that case will illuminate the issues in this disciplinary proceeding.

was false at the time he made it. Kennedy has not alleged that Van Powers at any time did anything more than hold out the possibility that he would receive an unstated increase at some point in the future. Indeed, the firm had recently and specifically denied Kennedy a salary increase for the relevant period.

■ Kennedy's essential quarrel with all of these DR 1–102(A)(4) findings, however, is that they do not relate to the practice of law and accordingly should not expose him to disciplinary action. He views the practice of law as restricted in a narrow sense to matters relating to clients and the courts. Thus, in his words, "the Board on Professional Responsibility and the Hearing Committee are increasingly arrogating to themselves ethical oversight of an attorney's conduct in any phase of life, even if it does not involve relations with a client or the court." This statement, while properly counseling restraint in disciplinary actions not directly related to clients and the courts, misconceives a primary purpose of disciplinary proceedings, which is to protect the public by assuring the continued fitness of an attorney to practice law. It also understates the evidentiary value of all dishonest conduct for predicting unprofessional behavior and harm to the public, and ignores the plain language of our disciplinary rules.[5] Dishonest conduct by attorneys also erodes public faith in the ethics of practicing attorneys.

■ This court has consistently upheld findings that acts unrelated to the practice of law may nonetheless violate DR 1–102(A)(4). *See In re Hadzi–Antich,* 497 A.2d 1062 (D.C.1985) (submitting falsified resume to prospective employer). The rationale is that some "conduct [in a private capacity] reflects adversely on ... professional fitness." *In re Terrell,* No. 85–457 (Feb. 7, 1986). In *Terrell,* an attorney had received a friend's permission to use the friend's company credit card to rent a car.

This court ordered a sixty day suspension because the attorney used the car beyond the permitted length of time and later attempted to pay for the rental with a check drawn on a closed account. The Board stated, "The combination of inability to manage financial affairs and willingness to lie is obviously a dangerous pattern for a lawyer who may be called upon to handle other people's money."

## II. *Sanction*

Bar Counsel and the Hearing Committee recommended that Kennedy should be suspended for ninety days. The Board recommended that Kennedy should be suspended for a year and day, which will require him to prove rehabilitation in support of an application for reinstatement to the Bar. D.C.Bar R. XI, § 3(2). The Board concluded that the more serious sanction was required in order to be consistent with recent Board recommendations for similar conduct. This court "shall adopt the recommended disposition of the Board unless to do so would foster a tendency toward inconsistent dispositions for comparable conduct or otherwise would be unwarranted." D.C.Bar R. XI, § 7(3). When the court disagrees with the Board as to the seriousness of the offense or the demands of consistency, however, the Board's recommendations are accordingly granted less weight. *Reback, supra,* 513 A.2d at 230–31.

The Board relied on *In re Hutchinson,* No. 86–82 (Bd. Prof. Resp. Jan. 25, 1985), in which it recommended a year's suspension for the attorney's presentation of false testimony to the Securities and Exchange Commission and for communicating material inside information. It also relied on *In re Schneider,* No. 73–83 (Bd. Prof. Resp. Jan. 3, 1986), in which it recommended a year's suspension for an attorney's alteration on eight occasions of credit card receipts in order to recoup legitimate out-of-pocket travel expenses.

---

**5.** DR 1–102(A)(4) does not limit its proscription of "dishonesty, fraud, deceit, or misrepresentation" to acts related to the practice of law. D.C.Bar R. XI, § 2 states that, "It is the duty of every [attorney] to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the Bar as conditions for the privilege to practice law."

The sanction recommended by the Board fails to achieve consistency with the prior opinions of this court and must be examined in light of *Reback, supra,* 513 A.2d 226 (six months for neglect and misrepresentation to client and court), which was decided ten days after the Board's disposition in the instant case, and in light of our recent decision in *In re Hutchinson,* 534 A.2d 919 (D.C.1987) (en banc) (one year for conduct involving moral turpitude and dishonesty by repeated misrepresentation to federal investigative agency for personal gain). In both cases the attorneys committed a series of misdeeds in order to conceal a prior misdeed. In *Reback,* the attorneys neglected a case and when it was dismissed by the court they falsely signed the client's name to a second complaint, had it notarized, and filed it in court. 513 A.2d at 228. In *Hutchinson,* in order to protect a friend and his own illegal profits, the attorney lied twice during a federal investigation of insider trading. For purposes of the appropriate sanction, the court noted that Hutchinson's conduct, unlike the conduct of Reback and Parsons, led to a criminal conviction and was not aimed at rectifying a problem but to assure personal profits. 534 A.2d at 926. Although neither case purported to establish a ceiling for misrepresentation cases, they do provide a touchstone that must be taken into account in comparable cases. In *In re Schneider,* No. 86–21 (D.C. Oct. 3, 1986), the court remanded the case to the Board for reconsideration of the sanction in light of *Reback.*[6] Consequently, because we disagree with the Board's conclusions about the seriousness of the violations, which were essentially unrelated to the practice of law, we view the recommended sanction to be clearly excessive. A reduced sanction is in order because the circumstances of the instant case are less serious than the violations in either the *Reback* or *Hutchinson* cases.

■ We agree, in general, with Kennedy's contention that his violation of DR 3–101(B), taken alone, is not very serious as compared to other disciplinary violations and would not justify a harsh sanction. Arguably, the seriousness of such a violation is aggravated when, after ninety days, the neglectful attorney may be engaging in the practice of law while under suspension; two years is clearly an excessive period of time in which to neglect payment. In choosing a sanction, however, we must consider the reason for imposing this suspension. Kennedy's nonpayment of Bar dues says little about his fitness to practice law in the District of Columbia.

■ Kennedy refused delivery of the certified letter notifying him of his suspension for nonpayment of Bar dues, allegedly because he believed that it pertained to the mortgage on his home. At the hearing, however, he admitted that he knew he "would be suspended" if he did not pay his dues. He later clarified this statement by claiming that he was unaware that action had been taken to suspend him from practice. This statement is supported by the plain language of D.C. Bar R. II, § 5, which states that a membership *"may* be suspended by the Board of Governors in the manner provided in the By-laws." (Emphasis added.) The rules do not state that suspension is automatic, and reasonable claims to a lack of knowledge of the suspension should be taken into account.[7] *In re Willcher,* 404 A.2d 185, 189 (D.C.1979) (mental problems and mail frequently unopened). Taken alone, this violation would ordinarily justify the milder sanction, if any, of an informal admonition, a censure, or a reprimand.[8] In our view, the purposes

**6.** On remand, the Board recommended that Schneider be suspended for six months. The case is now once again on appeal to this court for a review of the recommended sanction. Schneider has again argued that the recommended sanction is still excessive.

**7.** The Board made a finding that Kennedy "knew that suspension follows the nonpayment of Bar dues," but it did not respond to Kennedy's contention that he did not know that action

had been taken against him. The Board is, of course, free to conduct further proceedings on this point.

**8.** In *In re Jamison,* Nos. 83–1399 & 83–1422 (D.C. June 20, 1984), a violation of DR 3–101(B) was found when an attorney continued to practice law for a month after having been suspended for his failure to pay Bar dues. The case provides no guidance as to the appropriate sanction because Jamison was disbarred for approx-

of imposing discipline on attorneys do not require that the Bar employ the draconian sanction of suspension to collect its dues from duly admitted and presumably competent and honest attorneys.

The question remains whether this violation can support a longer period of suspension when considered in conjunction with other disciplinary violations and, if so, to what extent. This violation is similar to Kennedy's other violations because it involved the mismanagement of his financial obligations and reasonably can be considered as evidence of a pattern of misconduct. Under these circumstances, the Board would be justified in considering this DR 3–101(B) violation to be in the nature of an aggravating factor.[9]

■ We also generally agree with Kennedy's second contention that since the acts constituting the violations of DR 1–102(A)(4) do not relate to the practice of law, they should warrant a less severe sanction than similar acts committed in the course of representing a client. Bar Counsel observes that, "This court has never explicitly stated that conduct outside an attorney's practice should be considered a mitigating circumstance." The Board assumed, and Bar Counsel now argues, that three of the violations were related to the practice of law, presumably the nonpayment of dues and the two instances in which Kennedy withheld fees from his law firm. In our view, however, the role of a lawyer is to represent and advise clients in a fiduciary capacity and to carry out the administration of justice; the purpose of professional discipline is not to collect dues or allocate fees properly between legal associates. Disciplinary rules are applicable, but the violation is not the same as one that occurs in the context of representation.

Accordingly, we decline to depart from the view that dishonest actions committed outside of the representation of a client, while constituting a violation of DR 1–102(A)(4), need not necessarily be sanctioned to the same degree as similar acts committed in the course of representation. In *In re Kent*, 467 A.2d 982 (D.C.1983), the court explicitly considered as a mitigating factor, along with the respondent's mental problems, that the "incident of dishonesty was completely unrelated to the practice of law," and concluded that "the absence of any relation between respondent's conduct and her professional responsibilities suggests that a lengthy suspension is unwarranted." *Id.* at 985. Numerous factors must be considered in imposing a specific discipline, including "the nature of the violation, the mitigating and aggravating circumstances, the need to protect the public, the courts, and the legal profession." *In re Haupt*, 422 A.2d 768, 771 (D.C.1980); *see also Hutchinson, supra*, 534 A.2d at 924; *Reback, supra*, 513 A.2d at 231. The relation of an act to the practice of law illuminates and properly focuses this inquiry.

■ Our approach is consistent with the essential purpose of professional disciplinary proceedings, which is to "question the continued fitness of a lawyer to practice his profession.... The distinction between fitness and punishment must be maintained in this delicate judgment." *In re Kleindienst*, 345 A.2d 146, 147 (D.C.1975), *overruled as to sanction, In re Hutchinson, supra*, 534 A.2d at 927. The cases cited by Bar Counsel, *see, e.g., In re O'Neil*, No. 502–82 (Bd. Prof. Resp. Apr. 29, 1985) (rules require honesty and integrity in general); *In re Gutjahr*, No. 278–79 (Bd. Prof. Resp. Sept. 11, 1981), only support the proposition that conduct outside the practice of law can violate the disciplinary rules when they reflect adversely on the fitness to practice law and discredit the legal profession. They do not state that similar actions should be punished to the same extent regardless of their impact on the representation of clients and the practice of

---

imately seventeen disciplinary violations, including perjury, failure to appear in court on behalf of several clients, conflict of interest, and the severe and repeated mismanagement of client funds.

9. Bar Counsel contends that the Board did consider this violation as an aggravating factor. Our review of the record reveals no such usage.

law in general. Deterrence is also a legitimate goal of disciplinary proceedings, *In re Wild,* 361 A.2d 182, 183 (D.C.1976), but clients in general and the administration of justice are the primary focus of protection.[10]

The situations are at least conceptually different because an attorney will not necessarily conduct private affairs in the same manner in which the attorney handles the professional, fiduciary responsibility to manage the legal and financial affairs of others. Failure at the former may make failure at the latter more likely; it does not render the breach of professional responsibilities inevitable. A failure to recognize this distinction would mean that an attorney is subject to greater sanction as a result of the conduct of the attorney's private affairs than are other persons simply because the person is a member of the Bar, and that the disciplinary proceedings will unjustifiably intrude into aspects of private life that are unrelated to the practice of law.

 Under the most analogous of our previous cases, the nonpayment of bar dues and the three violations of DR 1–102(A) 4), which were not directly related to the practice of law, would justify a sanction in the range of sixty to ninety days. A slightly more stringent sanction would be justified here than in *In re Landesberg,* 518 A.2d 96 (D.C.1986), because Kennedy has displayed a disturbing tendency to cut corners in his financial affairs. In addition, several aggravating factors counsel a harsher sanction: Kennedy received an informal admonition two years after his admission to the bar for several violations that occurred in the context of his representation of a client.[11] Moreover, we note, without assigning special emphasis to the circumstance, since an attorney is entitled to protest a recommended sanction, that Kennedy has expressed no remorse during the instant proceedings.

Accordingly, we conclude that a sanction of ninety days for the four violations of the disciplinary code is more in keeping with our recent decisions than the sanction recommended by the Board. This sanction more properly reflects the weight that should be accorded to the aggravating factors based on the disciplinary violations at issue. It also takes into account the pattern of conduct and Kennedy's prior disciplinary record. *See In re Rosen,* 481 A.2d 451, 455 (D.C.1984) (previous discipline should not lead to disproportionate sanction).

It is hereby ORDERED that Kennedy shall be suspended from the practice of law for ninety days which shall commence thirty days from the date of this opinion.

---

10. For example, a lie to another lawyer is more serious for disciplinary purposes when it prejudices the interests of that lawyer's client.

11. The violations were of DR 6–101(A)(3) (neglect); 7–101(A)(1) & (2) (failure to seek a client's lawful objectives) (failure to carry out a contract of employment); 9–102(B)(4) [now 9–103(B)(4) ] (failure to deliver property to client promptly).